FILED

2005 Aug-31  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **WENDELL CILLIE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:02-CV-1897-RDP** |
| | } | |
| **ALABAMA DEPARTMENT OF** | } | |
| **YOUTH SERVICES, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

Pending before the court are Plaintiff's Motion for Summary Judgment (Doc. #99) filed on July 15, 2005, and Defendants' Motion for Summary Judgment (Doc. #92) filed on July 8, 2005. Also pending before the court is Plaintiff's Motion to Strike (Doc. #122) filed on July 22, 2005.[1]

With respect to Plaintiff's federal claims, the entry of summary judgment in favor of Defendants is appropriate because they have demonstrated that no material factual disputes exist and that they are entitled to judgment as a matter of law. More specifically, Plaintiff has abandoned pursuit of his claims made under 42 U.S.C. § 1983 against the Alabama Department of Youth Services ("DYS"); accordingly, DYS is entitled to summary judgment on those claims. As for his race, gender, and retaliation claims premised upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the court determines that Plaintiff is unable to establish a *prima facie* case of discrimination. Alternatively, Plaintiff is unable to show pretext in the legitimate, non-discriminatory reasoning that explains DYS's treatment of him. Additionally, the court concludes

---

[1]Because the court reaches its decision without any consideration of or reliance upon the affidavit of Walter Wood, it will enter an order mooting this motion.

that Defendant Walter Wood ("Wood") is entitled to qualified immunity on all federal claims asserted against him.

Finally, with respect to Plaintiff's state law libel claims, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over it. Accordingly, the court will dismiss those causes of action without prejudice.

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Wendell Cillie ("Cillie") is an African American male and a resident citizen of Montgomery County, Alabama. (Doc. #62 ¶ 4). Cillie began his employment as a Youth Services Aide with DYS at its Chalkville Campus in 1991. (Doc. #62 ¶¶ 11-12). Cillie originally filed this case on July 31, 2002, and asserted a variety of claims against Defendants relating to his discharge from DYS during the summer of 2001. (*See generally* Doc. #1).

On July 29, 2004, in response to a prior order, Plaintiff filed a Consolidated Complaint setting forth the following claims against Defendants: Count I, for race discrimination against DYS under Title VII; Count II, for sex discrimination against DYS under Title VII; Count III, for federal constitutional violations of Plaintiff's First, Fifth, and Fourteenth Amendment rights against DYS asserted pursuant to 42 U.S.C. § 1983; Count IV, for libel against DYS under Alabama state law; Count V, for federal constitutional violations of Plaintiff's First, Fifth, and Fourteenth Amendment rights against Wood asserted pursuant to 42 U.S.C. § 1983; and Count VI, for libel against Wood under Alabama state law.

## II.   UNDISPUTED FACTS[2]

As stated above, Plaintiff held the position of Youth Services Aide at DYS's Chalkville location.  As a Youth Services Aide, Plaintiff was often in contact with the female minor students who were detained at that facility.  (AF No. 2.1).[3]  Whether his contact was from the standpoint of supervising, observing, escorting, restraining the students when necessary, participating in searches of the students, transporting or even counting the students, Plaintiff's job enabled him to have considerable exposure to a maximum of twenty-three (23) female students at practically any moment during the course of his shift at work.  (AF No. 2.2).

In May 2001, allegations of sexual abuse began to surface against certain DYS employees at Chalkville.  (AF No. 3.1).  These allegations were brought by both former and current female Chalkville detainees.  (AF No. 3.2).  An investigation into the allegations was undertaken by James V. Kent ("Investigator Kent"), DYS's Chief of Security.[4]  Wood, DYS's Executive Director, did not

---

[2]The court has reviewed the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party.

[3]The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Plaintiff has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case.  Whenever Plaintiff has adequately disputed a fact offered by Defendants, the court has accepted Plaintiff's version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' Statement of Facts.  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 5.2) would indicate the second sentence of paragraph 5 of Defendants' Statement of Facts is the subject of the court's citation to the record.  The court also notes that Plaintiff has filed a total of 145 facts in support of his summary judgment motion, most of which are not material to the court's opinion.  (Doc. #106; Doc. #113).  To the extent, however, any are, the court has referred to them in its opinion.

[4]Plaintiff disputes Defendants' characterization of the investigation (AF No. 4), and claims that other persons were involved in the investigation.  The court finds this dispute is not material.

direct, supervise, or otherwise participate in the investigation.  (AF No. 5.1).  Furthermore, Wood

was not advised as to any of the details of the investigation while it was underway.  (AF No. 5.2).

On May 25, 2001, the girls' accusations against Plaintiff were formalized into separate

"charges," that were sent to him.  In particular, Plaintiff was charged with violating specific portions

of the Alabama State Personnel Board ("Board") Rules, as well as DYS and Chalkville's internal

rules and policies.  (AF No. 6.1).[5]  A total of six (6) charges were brought against Plaintiff based on

the girls' accusations.  (AF No. 7.1).[6]  More specifically, the Plaintiff was accused of the following:

> It is alleged by T.G. . . that since she has been confined at Chalkville in June, 2000,
> you have on occasion . . . walked into her room without knocking, when her
> roommate had no clothes on.  She also alleges that you stick your head into the
> bathroom without knocking.
>
> It is further alleged by L.D. . . that since she has been confined to Chalkville on
> October 10, 2000, on several occasions you come into her room unannounced.  She
> further alleges that one time when you did so, she was in bed and you tried to
> persuade her to get out from under the covers so you could see her.
>
> It is further alleged by A.N. . . that she has been confined to Chalkville in February,
> 2001. . .you came into her room after she had taken her shower, unannounced.  She
> further alleges that because you look into the girls' windows, Ms. Long (another
> DYS staff) told her to put paper in her window when she was getting dressed.
>
> It is further alleged by A.F. . . [that] during the period June 7, 2000, to March 23,
> 2001, you walked into the showers and bathrooms unannounced even when she
> would say that she and other female children were in there. She also alleges that you
> looked in the door windows when you knew that she and other female children
> committed to DYS were changing clothes.  She alleges that she had to turn out the
> light to change.

---

[5]Plaintiff admits that he received the letter dated May 25, 2001, but denies the specific
application of the Board Rules and DYS and/or Chalkville policies that he was cited with violating
based upon the reported misconduct.

[6]Plaintiff did not specifically respond to the first, second, or third sentence of paragraph 7 of
Defendant's Statement of Undisputed Facts; accordingly, the court deems the facts asserted therein
to be either admitted or undisputed.

It is further alleged by K.B. . . that on several occasions since she was confined to Chalkville, you go into the bathroom when she and other female children in the custody of DYS and confined to Chalkville are in there.

It is further alleged by J.C. . . that on numerous occasions since she has been at Chalkville for the last nine (9) months, you come into the girls' cottage rooms without knocking and look in the showers and bathrooms while she and other female children in the custody of DYS are inside.

(AF No. 7.2).

This list of charges was later amended to include only four formal charges made against Plaintiff: (1) violations of two Board Rules that prohibited disruptive conduct and a serious violation of any other department rule (AF No. 9.1);[7] and (2) two other charges which alleged violations of DYS Policy 13.8[8] and Chalkville Policy and Procedure Guidance Manual 18.5.[9]  (AF No. 9.2).

The girls' individual allegations were presented to Plaintiff in a June 14, 2001 letter from Wood.  (AF No. 10).  In this same notification letter, Plaintiff was provided with the date, time, and place of his pre-termination hearing.  (AF No. 11; AF No. 13).  The letter advised Plaintiff that the hearing would be conducted by an administrative law judge ("ALJ") and that Plaintiff would be allowed to present witnesses.  (AF No. 12).  Although he had the initials of his accusers, Plaintiff

---

[7]Similar to the contents of paragraph 3, Plaintiff admits that the formal charges against him were amended to include only 4, but disputes their application as "vague and ambiguous" and as not encompassing the allegations asserted against him.

[8]DYS Policy 13.8 states that it was DYS' policy to protect students in its care from: personal abuse, corporal punishment, personal injury, disease, property damage, and harassment.  The policy further stated that, any case of child abuse or neglect that came to the attention of personnel would be promptly reported in accordance with Alabama law; [and]

[9]Chalkville Policy and Procedure Guidance Manual 18.5 requires that students in DYS' care be treated with respect and dignity, and that such students would not be subject to corporate or unusual punishment, disease, property damage, harassment, humiliation, mental or physical abuse or punitive interference with the daily functions of living, such as eating or sleeping.

did not receive their full names from DYS until his subsequent hearing before the Board.  (AF No. 14; AF No. 45).  Plaintiff disputes that his pre-termination hearing was held in accordance with the standards set forth in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) and *City of Orange Beach v. Duggan*, 788 So. 2d 146 (Ala. 2000) maintaining that no explanation of the evidence was given to him as none was submitted by DYS.  (AF No. 15); (Doc. #95 at Ex. 3 at 4:16-17 ("So we do not intend to put on an evidentiary hearing this morning.  All that is required under that case is notice of the charges and an opportunity for Mr. Cillie to respond and present his side of the story as the case quotes.")).

At the June 27, 2001 pre-termination hearing, Plaintiff was represented by counsel and was allowed to present affidavits from co-employees (rather than live testimony of witnesses).  (AF No. 16).  Plaintiff was permitted to make (and not prevented from making) any statements in his defense at the hearing.  (AF No. 17).  ALJ Jeffrey Long, of the Alabama Attorney General's Office, presided over the hearing.  (AF No. 16).  The ALJ considered the girls' unsworn allegations offered by DYS at the hearing.  (AF No. 18).  The ALJ recommended that termination of Plaintiff's employment was not appropriate under progressive descriptions of state personnel policy and recommended that Plaintiff be suspended.  (AF No. 19; AF No. 21).  More specifically, after concluding that there were "reasonable grounds to believe that the charges against Mr. Cillie [were] true[,]" the ALJ stated that:

> The next step of the analysis is a judgment call which only the Director of the Department of Youth Services can make.  The issue is whether the actions of Mr. Cillie warrant termination.  Assuming the charges to be true, do several isolated incidents of Mr. Cillie coming in contact with nude or partially nude students warrant termination especially in light of the fact that Mr. Cillie has never been warned or reprimanded or suspended concerning this conduct.  It is the opinion of the undersigned that in the event these charges are true as determined by a more extensive post-termination proceeding, then they would probably at least warrant reprimand.  However, in the context of progressive punishment as contemplated by

6

the State Personnel scheme, it is the opinion of the undersigned that termination is not warranted based on these charges.

(Doc. #95 at Ex. 2 at 4-5).

Notwithstanding the ALJ's recommendation, in a letter dated July 20, 2001, Wood informed Plaintiff that his employment was being terminated. (AF No. 22.2). Plaintiff disputes the bases for his dismissal included in the letter and points out that in firing Plaintiff, Wood failed to follow the recommendation of ALJ Long. (AF No. 22.1; AF No. 23).

After receiving Wood's July 20, 2001 letter, Plaintiff appealed his discharge to the State Personnel Board. (AF No. 24.1). On March 6, 2002, a hearing on Plaintiff's appeal was conducted by the Chief Administrative Law Judge ("CALJ"), Richard M. Meadows, which Plaintiff maintains was a sham. (AF No. 24.2; AF No. 24.3). In January 2002, prior to the hearing, the CALJ, entered an order stating that the testimony of Plaintiff's female accusers would be taken by videotaped trial depositions and later admitted into evidence. (AF No. 25). In his findings, the CALJ explained his reasoning behind allowing for the introduction of videotaped trial depositions in lieu of live testimony at the hearing including foreseeable unavailability of witnesses (due to the girls' limited time of detainment or movement outside of the CALJ's jurisdiction; their reluctance to testify; or their outright last minute failure to appear), the need to maintain anonymity of the girls, and the ability of Plaintiff to fully and completely explore the witnesses' testimony and evaluate their credibility by way of the videotaped trial depositions and other pretrial discovery. (Doc. #95 at Ex. 5 at 3-5). The CALJ also noted that Plaintiff did not object to use of videotaped trial depositions at the time when the issue was first discussed. (AF No. 36).[10]

---

[10]Plaintiff did not specifically respond to paragraph 36 of Defendant's Statement of Undisputed Facts; accordingly, the court deems the facts asserted therein to be either admitted or

The evidence considered by the CALJ at the March 6, 2002 hearing, included the videotaped deposition testimony of four of Plaintiff's accusers, Plaintiff's own testimony, the testimony of Plaintiff's co-workers, and other related documents.  (Doc. 95 at Ex. 5 at 7-30).  The CALJ issued a 59 page Proposed Finding of Fact and Recommendation, which found that Wood's decision to discharge Plaintiff should be sustained.  (Doc. #95 at Ex. 5 at 56, 58 ("Mr. Wood is exactly right and that a single occasion of sexual exploitation by an employee is more than sufficient grounds to terminate an employee.")).

On July 10, 2002, the Board ordered that Wood's decision and the CALJ's recommendation be affirmed, and that Plaintiff be dismissed.  (AF No. 43).  While Plaintiff's appeal was pending before the Board, he filed a charge of discrimination against DYS, alleging race and gender discrimination.  (AF No. 44.1).  Specifically, Plaintiff alleged that he was not provided with the students' names or the dates of the incidents alleged, and that he was not allowed to present witnesses at his June 27, 2001 pre-termination hearing.  (AF No. 44.2).  By the time of the hearing before the Board, Plaintiff not only had the names of his accusers but was also able to testify in detail about each of the girls and make assertions about them.  (AF No. 45; AF No. 46).

On July 31, 2002, Plaintiff filed this lawsuit against Defendants DYS and Wood, in his individual capacity, alleging race and gender discrimination under Title VII and 42 U.S.C. § 1983 and libel.  (AF No. 47).  Plaintiff also filed a mandamus appeal of his termination to the Circuit Court of Montgomery County claiming that the Board's decision was in error.  (AF No. 48).

—————————————

undisputed.  The court recognizes that Plaintiff did, however, object to the use of the videotaped trial depositions subsequent to the initial discussion of the topic.

### III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination.  Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered

by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type,

for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment

action, even though defendant's legitimate reason may also be true or have played some role in the

decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert*

*Palace*, 539 U.S. at 101-02.

## IV.   DISCUSSION

### A.      Plaintiffs' Claims Against DYS

#### 1.      Plaintiff's claims against DYS asserted pursuant to § 1983 are due to be dismissed.

In his brief in opposition to Defendants' Motion for Summary Judgment, Plaintiff concedes

that DYS is not a proper defendant for his § 1983 claims and has abandoned pursuit of any

constitutional claims against DYS.  (Doc. #116 at 1 ¶ 1).  Accordingly, DYS is entitled to a dismissal

with prejudice of all counts alleged against it pursuant to § 1983.[11]

#### 2.      DYS is entitled to summary judgment on Plaintiff's claims of unlawful discrimination based on race and gender.

Defendants' Motion for Summary Judgment is also due to be granted on Plaintiff's unlawful

---

[11]*See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned).  Plaintiff does not respond to this argument and thus is deemed to have abandoned this claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment.").

discrimination claims because he has failed to produce substantial evidence of any intentional discrimination. It is axiomatic that a plaintiff in a disparate treatment case such as this one must prove "intentional discrimination" in order to prevail.[12] *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 153 (The "'ultimate question' in every disparate treatment case 'is whether the plaintiff was the victim of intentional discrimination.'"). The Supreme Court has stated unequivocally that "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment" in a Title VII disparate treatment case. *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (citation omitted); *see also United States Postal Serv. v. Aikens*, 460 U.S. 711, 715 (1983); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 528-29 (11th Cir. 1983) ("discriminatory motive, purpose or animus"). The Supreme Court has also held that "discriminatory intent" in a Title VII case "means actual motive; it is not a legal presumption to be drawn from a factual showing of something less than actual motive." *Pullman-Standard v. Swint*, 456 U.S. 273, 289-90 (1982).[13]

In a circumstantial evidence case alleging discrimination, the four *prima facie* elements that Plaintiff must establish are: (1) he belongs to a protected category; (2) he suffered an adverse employment action; (3) he was treated less favorably than other similarly situated employees outside of his protected class; and (4) he was qualified for the position. *See, e.g., Holifield v. Reno*, 115 F.3d

---

[12]Plaintiff does not maintain that he has direct evidence of discrimination.

[13]Of course, these standards apply with equal force to Plaintiff's discrimination claims under the Equal Protection Clause, as predicated on 42 U.S.C. § 1983. *See Jean v. Nelson*, 711 F.2d 1455, 1486 n.30 (11th Cir. 1983) ("Although the standard of proof in Title VII cases differs from that in constitutional equal protection cases, the framework for proving a case, *i.e. prima facie* case, rebuttal, ultimate proof, is the same.") (citing *Castaneda v. Partida*, 430 U.S. 482, 495-96) ("establishing *prima facie* case requiring rebuttal in jury discrimination case").

1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Therefore, the initial inquiry for the court is whether Plaintiff has adduced sufficient evidence of a *prima facie* case of discrimination.

### a.   Plaintiff cannot establish a *prima facie* case of race or gender discrimination.

### i.   Plaintiff has no suitable comparators.

In support of his race discrimination claim, Plaintiff conclusorily argues that "[u]pon information and belief, allegations of misconduct were levied against white employees . . . , but they were not terminated as a result of the allegations."  (Doc. #95 at Ex. 8).  Plaintiff has offered no substantial evidence to support this bare allegation.  Plaintiff also points out that Wood testified that he did not recall suspending any white male employees or placing them on leave without pay.  (Doc. #106 ¶ 126).  However, Plaintiff has not referred the court to any names of white employees who held the same position as Plaintiff (Youth Services Aide) and were otherwise similarly situated to him, but were treated more favorably than he.[14]  In fact, Plaintiff candidly admitted during his deposition that it was his understanding that, even if he were white, DYS would have taken action against him based upon the same evidence.  (Doc. #95 at Ex. 14 at 82-83:22-25).

---

[14]The court notes that in his statement of facts, Plaintiff does make references to Jimmy Jenkins and Mr. Burnett.  However, Plaintiff identifies Mr. Burnett as a black employee (Doc. #106 ¶ 99), and from the context of his other allegations, implies that Jimmy Jenkins is also a black employee.  (Doc. #106 ¶ 101).  Moreover, nowhere in his fact section nor in his briefs does he identify a similarly situated white employee, who was treated better than he.  To the contrary, Plaintiff acknowledges and relies upon testimony from Investigator Kent that no white male suitable comparators exist: "Kent stated there were no allegations of impropriety asserted against any employees who were non-black males."  (Doc. #124 ¶ 50).  Accordingly, an alternative basis for dismissing Plaintiff's claim for race discrimination is that he has implicitly abandoned it by not addressing it with any degree of sufficiency in responding to Defendants' Motion for Summary judgment.

In support of his gender discrimination claim, Plaintiff generally states that "it is undisputed that the same type allegations were asserted against black females" and that the female employees "were not suspended immediately nor were proceedings commenced against them."  As for female employees who also were the subject of some allegations made about them during the May 2001 investigation,  Plaintiff has pointed to only two—Ms. Garfield and Ms. Hines.[15]  However, in offering these two employees as potential comparators, Plaintiff has failed to produce sufficient evidence that he and they are similarly situated.  Moreover, Plaintiff's failure to demonstrate that DYS treated similarly situated employees outside his protected classification more favorably than him is fatal to his claims.  *See Jones v. Gerwins*, 874 F.2d 1534, 1542 (11th Cir. 1989); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 724 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986); *Tate v. Wayerhouser Co.*, 723 F.2d 598, 605 (8th Cir. 1983), *cert. denied*, 469 U.S. 847 (1984).

The standard to be applied in evaluating whether employees are similarly situated is now a familiar one:

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects. . . .  In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

---

[15]Defendants' brief in support of summary judgment identifies some additional persons that Plaintiff mentioned during his deposition as potential comparators.  (Doc. #93 at 34-40 ¶¶ 3-7).  However, as Defendants have correctly pointed out, Plaintiff has not come close to carrying his burden of demonstrating how these individuals are similarly situated to him.  For example, several of the employees held a position different than Plaintiff's, all but one of the them were identified by Plaintiff as being a party to a lawsuit that was filed subsequent to the May 2001 investigation, the allegations about which he could not articulate, and the only one that was a part of the May 2001 investigation, held a different position than Plaintiff and was reported for inappropriate name-calling by a single student, which is dwarfed in comparison to the quality and quantity of the misconduct reported from multiple sources about Plaintiff.

13

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield*, 115 F.3d at 1562). Additionally, the Eleventh Circuit has held that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted); *see also Manicci v. Brown*, 171 F.3d 1364, 1668-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's conduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."). Where, as here, there is an absence of any other evidence suggesting that a decision was discriminatory, the existence of a similarly situated employee is critical to a plaintiff's ability to prevail on summary judgment. *See Holifield*, 115 F.3d at 1562 (*"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."*) (emphasis in original) (citation omitted).

These principles have particular application in cases involving an employee who was discharged for the alleged violation of a work rule. A plaintiff fired for violating an employer's rules must show that the employer retained an employee outside the protected class whom the employer believed engaged in nearly identical rule violations. *Nix v. WLCY Radio*, 738 F.2d 1181, 1185-87 (11th Cir. 1984); *see also Jones v. Gerwens*, 874 F.2d at 1540-42, *modified by Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998) (holding that, in cases involving alleged racial bias in the application of discipline for violation of work rules, plaintiff must show that the disciplinary measures enforced against him were more severe than those enforced against the other persons outside his protected class who were believed to have engaged in similar misconduct), *modified in non-relevant part on denial of reh'g by Jones v. Bessemer Carraway Medical Ctr.*, 151

14

F.3d 1321, 1323-24 (11th Cir. 1998).

With these legal standards in mind, the court will analyze whether the individuals identified by Plaintiff are appropriate comparators.

**a)      Ms. Garfield**

Plaintiff maintains that he and Ms. Garfield are similarly situated because of a written statement taken by Investigator Kent during his May 2001 investigation in which one student with the initials of J.C. alleged that "Garfield she likes rubs on my breast and try to touch in between my legs and around my private area.  One day I was trying to show her something about my back and I pulled up my shirt and she went on down and started touching my breast."  (Doc. #95 at Ex. 10). Significantly, no other witnesses corroborated J.C.'s claims.  Moreover, no other students gave accounts of similar or other sexual misconduct by Ms. Garfield.   Upon completion of the investigation, DYS did not take any disciplinary action against Ms. Garfield.

As an initial matter, because J.C. had an i.v. port inserted in her chest at a spot very near her breast and part of Ms. Garfield's job involved assisting J.C. with cleaning the port and injecting her with medicine, Investigator Kent concluded that Ms. Garfield's physical contact with J.C. near her breast was not only likely, but also necessary. (Doc. #95 at Ex. 16).  Because the veracity of J.C.'s allegations about Ms. Garfield's improperly touching or rubbing her breasts were dubious at best given the location of J.C.'s i.v. port, Investigator Kent similarly doubted J.C.'s other assertion that Ms. Garfield had tried to touch her in between her legs.

However, even assuming the truth of J.C.'s statement about Ms. Garfield, the quantity and quality of her alleged misconduct are not nearly identical to that of the claims made about Plaintiff.

15

More specifically, the number of accusers (six)[16] and the pattern of consistent allegations about Plaintiff's attempts to leer at them in various stages of undress far exceeds the conduct complained of in the uncorroborated single statement made by one student against Ms. Garfield.  Therefore, Plaintiff and Ms. Garfield are not similarly situated, and Ms. Garfield is not an appropriate comparator with respect to Plaintiff.

**b)      Ms. Hines**

J.C. made similar allegations of misconduct about Ms. Hines.  More specifically, J.C. maintained that Ms. Hines "comes in my room at night and holds my hand and hugs on me and rub her breasts up against mine and I don't like it too much."  (Doc. #95 at Ex. 10).

Similar to J.C.'s allegations regarding Ms. Garfield, no other witnesses corroborated J.C.'s claims about Ms. Hines.  Moreover, no other students reported similar or other instances of improper sexual contact by Ms. Hines.  Upon completion of the investigation, DYS did not take any disciplinary measures against Ms. Hines.

Also, like the situation with Ms. Garfield, the multiple assertions from various accusers made about Plaintiff far exceed the quality and quantity of the one statement made by J.C. against Ms. Hines.  Accordingly, Plaintiff and Ms. Hines are not similarly situated, and Ms. Hines is not an appropriate comparator with respect to Plaintiff.

**b.      Plaintiff has not produced sufficient evidence of pretext.**

Alternatively, even if Plaintiff could establish a *prima facie* case, summary judgment in favor

---

[16]The court notes that J.C. is included in this group of six.  However, even if the court were to exclude J.C.'s allegations from the calculation, the five remaining witnesses' statements are of such quantity and quality that Plaintiff and Ms. Garfield still would not be similarly situated.

of DYS on Plaintiff's discrimination claims under Title VII is appropriate, because Plaintiff cannot show the reason given by DYS for terminating his employment is pretextual. DYS provided the following legitimate, non-discriminatory reason for discharging Plaintiff in its response to Plaintiff's Motion for Summary Judgment is: "a factual finding that the plaintiff exhibited conduct during the course of his employment with DYS which was in violation not only of DYS employment standards, but possibly criminal standards." (Doc. #123 at 13).

If an employer "articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25 (citing *Combs*, 106 F.3d at 1529). A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not

[discriminatory]." *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *see also Combs*, 106 F.3d at 1541-43.

The issue for the court is whether Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that DYS's articulated rationale for firing Plaintiff are a pretext–a lie–to cover up intentional unlawful discrimination.  He has not.

In addressing the issue of pretext, the Supreme Court has stated:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citations omitted).  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision,  judgment as a matter of law in favor of the employer would still be appropriate if the record:  1) conclusively demonstrates some other, non-discriminatory basis for the decision; or 2) reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.

The court fails to see, in all the multitude of summary judgment papers before it, where Plaintiff has met his burden of establishing pretext.  For example, Plaintiff has not offered any evidence of inappropriate remarks or comments made by Wood that might imply that he harbors a

discriminatory animus against men or non-Caucasians.[17]  To the extent Plaintiff implicitly argues

pretext is demonstrated because he was similarly situated to, but treated differently than, Ms.

Garfield and Ms. Hines, the court has already addressed these same arguments in the context of

finding that Plaintiff has not established a *prima facie* case.  Therefore, for the same reasons, the

court finds Plaintiff is not similarly situated to these female employees he claims to be his

comparators, and therefore, he cannot use them to establish pretext.

In lieu of showing pretext, Plaintiff questions the propriety of DYS's decision to discharge

him.  However, in doing so, Plaintiff misses the mark because the crucial examination at the pretext

level is whether the employer has honestly explained its actions, not whether the employer is "right:"

> Federal courts "do not sit as a super-personnel department that reexamines an entity's
> business decisions. No matter how medieval a firm's practices, no matter how
> high-handed its decisional process, no matter how mistaken the firm's managers, the
> ADEA [or Title VII] does not interfere.  Rather, our inquiry is limited to whether the
> employer gave an honest explanation of its behavior."  *Mechnig v. Sears, Roebuck
> & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) (citations omitted).  "[F]or an employer

---

[17]Plaintiff does offer by way of the affidavit of Carolyn P. O'Neal that:  "[I]t is obvious that the DYS hiring practices changed to favor gender/female hired employees as Mrs. O'Neal confirmed through her personal participation in hiring practices that prior to Cillie's termination the male to female ratio was approximately 4 out of 10 and afterwards they hired maybe two (2) males while hiring twenty (20) females." (Doc. #113 ¶ 141).  For several reasons, this "evidence" does not help Plaintiff avoid summary judgment.  First, this lawsuit is a discriminatory discharge case, not a hiring one, which makes the information significantly less meaningful to the court. Second, the numbers provided by Ms. O'Neal are based upon her recollection, rather than the actual hiring records maintained in the ordinary course of business by DYS, which would typically lead to a more reliable accounting.  Third, Ms. O'Neal states in her affidavit that she retired effective January 1, 2005, which means she does not have any personal knowledge of the current hiring practices or percentages of male and female employment at DYS.  Fourth, although Ms. O'Neal states that she "understood that females should be hired whenever possible as opposed to hiring male employees[,]" she does not attribute this understanding to anyone and therefore, it is inadmissible hearsay.  (Doc. #113 at O'Neal Aff. at 2 ¶ 4).  Moreover, even if Ms. O'Neal meant that Wood desired women to be hired over men, she makes it clear that this notion came about *after* the suspension and firing related to the sexual misconduct investigation, which would *not* be evidence of a discriminatory animus on the part of Wood at the time of Plaintiff's dismissal.  (*Id.*).

> to prevail the jury need not determine that the employer was correct in its assessment
> of the employee's performance; it need only determine that the defendant in good
> faith believed plaintiff's performance to be unsatisfactory...."  *Moore v. Sears,
> Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982) (emphasis in original). *See
> also Jones*, 874 F.2d at 1540; *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53
> (11th Cir.1987) ("[I]f the employer fired an employee because it honestly believed
> that the employee had violated a company policy, even if it was mistaken in such
> belief, the discharge is not 'because of race' and the employer has not violated §
> 1981.").

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  Plaintiff also complains about

what he says are inconsistencies in the hearing officer's finding that Jimmy Jenkin's viewing of

juveniles was accidental but that Plaintiff's observations of them was intentional.  Even if it could

be said that some of Plaintiff's accusers had a motivation to lie, that is not the critical point.  The key

question is whether DYS, in good faith, believed Plaintiff's accusers.  *See E.E.O.C. v. Total System

Services, Inc.,* 221 F.3d 1171, 1176 (11th Cir. 2000) (citing *Elrod v. Sears, Roebuck & Co.,* 939 F.2d

1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether employee was guilty of misconduct

but whether employer in good faith believed employee had done wrong and whether this belief was

the reason for the termination)); *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354,

1363 n. 3 (11th Cir. 1999) (holding that "[a]n employer who fires an employee under the mistaken

but honest impression that the employee violated a work rule is not liable for discriminatory

conduct"); *see* also *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir. 1993) (noting that

an employer's good faith belief that the employee's performance is unsatisfactory is a legitimate non-

discriminatory reason for termination).  Here, at best, Plaintiff's protestations show that DYS

mistakenly, but in good faith, concluded that he engaged in misconduct.  That is simply not enough

to establish pretext.

For the reasons stated above, summary judgment in favor of DYS is appropriate for the alternative reason that Plaintiff has produced insufficient evidence from which a reasonable jury could find pretext. *See Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir.1989) ("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its action.") (citation omitted).

### 3.     DYS is entitled to summary judgment on Plaintiff's retaliation claim.

In opposition to Defendants' Motion for Summary Judgment on his retaliation claim, Plaintiff vaguely states, "Cillie submitted evidence of retaliation - another employee was re-hired prior to his hearing whom had similar allegations as those asserted against Cillie. The difference is that Cillie filed his EEOC claim."[18]  (Doc. #116 ¶ 2).  Therefore, as Plaintiff maintains that his protected activity was the filing of his EEOC charge, his theory of retaliation is categorized under Title VII's participation clause.

As noted in more detail below, Defendants are entitled to summary judgment on Plaintiff's retaliation claims for at least two reasons.  First, Plaintiff has not produced any evidence of a causal connection between his alleged protected activity and his separation.  Second, there is no genuine

_____

[18]Noticeably absent from Plaintiff's response related to this comparator is any information about who the employee is, the date on which the re-hiring of the unidentified employee became effective, and other relevant circumstances surrounding that employment action.  The court believes, based upon the its reading of Plaintiff's other summary judgment materials, that he is possibly referring to either Jimmy Jenkins or Mr. Burnett.  However, as discussed in depth below, Plaintiff's reasoning that these facts create an inference of retaliation is incongruous with the undisputed order of events that apply to him–Plaintiff did not file his EEOC charge before he was fired, which necessarily means that his participation in the administrative process had no bearing on Wood's decision to discharge him.

issue of material fact regarding the legitimate non-retaliatory explanation for the alleged retaliatory

discharge.

To successfully establish a retaliation claim under Title VII, Plaintiff must show that (1) he

engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is causal

connection between the protected activity and the adverse employment action. *Stavropoulos v.*

*Firestone*, 361 F.3d 610, 616 (11th Cir. 2004) (citing *Bass v. Board of County Comm'rs, Orange*

*County, Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001)); *see also Gregory v. Georgia Dept. of Human*

*Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Brochu v. City of Riviera Beach*, 304 F.3d 1144,

1155 (11th Cir. 2002).

> **a.   The entire sequence of events shows a lack of a causal connection with respect to Plaintiff's retaliatory discharge claim.**[19]

The accusations about Plaintiff were formalized into separate charges on May 21, 2001.

Later, these were amended to include four separate charges:  (1) violation of Board Rule 670-X-19-

.01(g) for disruptive conduct of any sort; (2) violation of Board Rule 670-X-19.01 2(j) for serious

violation of any other department rule; (3) violation of Department Policy 13.8 for protection of

juveniles from harm; and (4) violation of Chalkville Policy and Procedure Guidance Manual 18.5

for protection of juveniles from harm.  (Doc. #95 at Ex. 1).  On June 14, 2001, Wood sent a Notice

of Pre-Termination Hearing (the "Notice") to Plaintiff which set forth the specific accusations made

about him and identified the four rules that he had allegedly violated.  (Doc. #95 at Ex. 1 at 00253).

---

[19]The court's analysis in this section applies equally to Plaintiff's retaliation claim against Wood based upon the First Amendment.  *See, e.g., Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004) ("To state a claim for retaliation in violation of the First Amendment, a public employee must show that her employer retaliated against her *because of* her speech on a matter of public concern.") (citation omitted) (emphasis added).

Wood began the letter by providing Plaintiff with the following warning: "I have received a recommendation from your supervisors that disciplinary action in the form of termination be taken based upon the following alleged inappropriate conduct and work performance[.]" (*Id.*). The Notice further advised Plaintiff that a hearing was set for June 27, 2001, at 10:00 a.m., in Homewood before an ALJ to "review the information presented . . . regarding [the] proposed disciplinary action." (*Id.* at 00254).

The hearing went forward as scheduled on June 27, 2001. On July 17, 2001, the ALJ rendered his recommendation. (Doc. #95 at Ex. 2). After receiving the ALJ's recommendation based upon the hearing, Wood determined that he would fire Plaintiff, and notified him of this decision in writing on July 20, 2001. (Doc. #95 at Ex. 4). Subsequently, Plaintiff appealed Wood's decision to the Board. While Plaintiff's appeal to the Board was pending, on October 16, 2001, he filed a charge of discrimination with the EEOC citing July 20, 2001, as the date on which the illegal discrimination took place. (Doc. #95 at Ex. 8).

The CALJ held a hearing on March 6, 2002, regarding Plaintiff's appeal, and on June 5, 2002, issued a Proposed Finding of Fact and Recommendation upholding the discharge decision. (Doc. #95 at Ex. 5). The Board ultimately accepted the CALJ's report and affirmed Wood's decision to dismiss Plaintiff on July 10, 2002. (Doc. #95 at Ex. 7).

In light of the above sequence of events, Plaintiff cannot show a casual link between his discharge and his EEOC charge because the process that led to his being fired began on June 14, 2001, long before he filed an EEOC charge, a federal discrimination lawsuit, or otherwise "participated" in an activity that would trigger the statutory protection against retaliation afforded by Title VII. Indeed, when Plaintiff did file his EEOC charge on October 16, 2001, the adverse

23

action about which he complains, *i.e.* his firing, had already occurred, nearly three months earlier. Consequently, Plaintiff cannot show that his dismissal is causally connected to the filing of his EEOC charge because over four months earlier, Wood had already initiated disciplinary proceedings against Plaintiff, including a specific warning that he could be fired, and nearly three months earlier, Wood had already discharged Plaintiff.[20]  *See Collado v. United Parcel Service Co.,* No. 04-11297, slip op. at 3043 (11th Cir. Aug. 2, 2005) ("As for the adverse action element, Collado cannot rely on UPS removing him from his full-time driving position.  He cannot because that was done before Collado had filed his EEOC charge, and the filing of that charge is the protected conduct he asserts.") (citing *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, [the plaintiff] must show that the adverse act followed the protected conduct . . . .")).

> ### b.    There is no substantial evidence rebutting the legitimate non-discriminatory reason for DYS's decision to discharge Plaintiff.

Even assuming that Plaintiff is able to satisfy his *prima facie* burden, DYS has  articulated a legitimate, non-retaliatory reason for its decision to discharge Plaintiff–a factual determination that Plaintiff had engaged in conduct contravening DYS employment standards, and possibly even being criminal in nature.  *Holifield,* 115 F.3d at 1564. "This intermediate burden [for employers] is 'exceedingly light.'"  *Id.*  (citing *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.

---

[20]In addition, absent evidence of knowledge of a plaintiff's protected conduct on the part of the decision-maker, no causal relation exists, and the time line in this case, necessarily means that Wood could not and did not have the requisite knowledge when (1) he sent the Notice to Plaintiff on June 14, 2001 advising him about the proposed disciplinary action, or (2) he fired Plaintiff on July 20, 2001.  *See Clover v. Total System Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (holding that the decision-maker must be aware of the protected conduct); *Bass,* 256 F.3d at 1119 ("[T]he Plaintiff must show that the person taking the adverse action was aware of the protected expression.").

1994)).  The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced.  *See Cantrell v. Jay R. Smith Manufacturing,* 248 F. Supp. 2d 1126 (M.D. Ala. 2003) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802; *Burdine,* 450 U.S. at 253-55).  Plaintiff then has the burden to show pretext in the DYS's explanation for its decision.

For the same reasons that Plaintiff cannot establish a causal connection on his retaliatory discharge claim, he cannot show pretext as a matter of law.  Plaintiff has not pointed out to the court any evidence from which a reasonable jury could conclude that Plaintiff's filing of an EEOC charge was the true reason for his discharge, as opposed to the interplay of the outcome of the hearing on accusations of misconduct made against Plaintiff and the rules that he was charged with violating, especially when the termination proceedings based upon those rules began over four months before the EEOC administrative process did.  Moreover, Plaintiff's firing, based upon those rules, took place nearly three months before Plaintiff filed his EEOC charge.  And, importantly, there is no evidence in the record of Wood's having said or done anything that would lead a jury to believe that he would retaliate against subordinates on the basis of their having exercised federally protected rights generally.

### D.    Plaintiff's Federal Claims Against Wood

#### 1.    Wood is entitled to qualified immunity.

The court further finds that Wood is entitled to summary judgment on Plaintiff's §1983 claims because he is due qualified immunity.  Qualified immunity offers complete protection for government officials sued in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The analysis utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless h[is] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). As the Eleventh Circuit has recently stated, "the salient question . . . is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "We generally accord . . . official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991).

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.[21] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. at 739 (internal quotations and citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Pelzer*, 536 U.S. at 739 (internal quotations and citations omitted).

---

[21]"Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

### a.   Wood was using his discretionary authority.

As a threshold matter, the government official first must show that he acted within his discretionary authority; in other words, that "objective circumstances [exist] which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).  In determining whether this test is met, there is no analysis of whether the official actually acted lawfully. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992).  Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the governmental officer's] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).  As such, "[i]t is perfectly logical for a court to find that someone who was acting illegally was acting within his discretionary authority." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998).  Given this broad standard and the fact that its application in this instance is not challenged, the court finds that Defendant Wood was acting "pursuant to the performance of [his] duties" and "within the scope of [his] authority" when he took the actions forming the basis for Plaintiff's § 1983 claims.

### b.   Plaintiff has not established a violation of a clearly established right.[22]

Having determined that Wood was operating within his discretionary authority, the court

---

[22]Plaintiff's sole First Amendment claim relates to his assertion that he was retaliated against for filing an EEOC charge.  The court has already explained why Plaintiff has no viable Title VII or First Amendment constitutional claim under that theory. *See* n.19, *supra*.  For similar reasons, there is nothing in the record to show that Wood was on notice that if he terminated Plaintiff he would be violating any of Plaintiff's clearly established rights under the First Amendment.  Accordingly, qualified immunity insulates Wood from individual liability as to any constitutional claims based upon the First Amendment as a matter of law.

must ask whether Plaintiff's allegations, if true, establish the violation of a constitutional or statutory right. *Bogle v. McClure,* 332 F.3d 1347, 1355 (11th Cir. 2003) (citing *Hope v. Pelzer,* 536 U.S. at 736 and *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If a constitutional or statutory right would have been violated under the plaintiff's version of the facts, the next step is to ask whether the right was clearly established." *Bogle*, 332 F.3d at 1355.

With respect to Plaintiff's equal protection allegations under the Fourteenth Amendment (which mirror his Title VII claims), Wood is due qualified immunity as to them because, even assuming Plaintiff's allegations are true, as demonstrated above, they do not rise to the level of an actionable claim and thus do not constitute a violation of the Equal Protection Clause. *See Portera v. State of Ala. Dept. of Finance*, 322 F. Supp. 2d 1285,   (M.D. Ala. 2004) ("[T]o the extent that Portera's equal-protection claims are identical to the Title VII claims which the court considered on the merits, these claims fail for the same reasons her Title VII claims fail."). (citing *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 805 (11th Cir.1995) ("in cases where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same")).  That is, he has not met his burden of making a sufficient showing that he was subjected to a violation of his rights.

But there are even more reasons to grant qualified immunity here.  Even if  Plaintiff's so-called "facts" are deemed stipulated facts, and even if Wood did violate Plaintiff's constitutional rights by taking adverse employment actions against him for his protected conduct on the basis of race and/or gender and/or retaliation,[23] the court finds that Wood is still due qualified immunity

---

[23]*See Bogle*, 332 F.3d at 1355 ("[T]here is no doubt that [during 2001, the operative time frame of Plaintiff's claims,] it was clearly established that intentional discrimination in the workplace on account of race [and gender] violated federal law.") (citing *Alexander v. Fulton*

under Eleventh Circuit law based on *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996).  In *Foy*, the Eleventh Circuit held that, "[w]here the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful and unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity." *Foy*, 94 F.3d at 1533.

The Eleventh Circuit further clarified in *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280 (11th Cir.2000), that a "defendant is entitled to qualified immunity under the *Foy* rationale only where, among other things, the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." *Stanley*, 219 F.3d at 1296; *Bogle*, 332 F.3d at 1356; *see also Johnson v. City of Ft. Lauderdale, Fla.*, 126 F.3d 1372, 1379 (11th Cir.1997).  Thus, even assuming that a defendant official acted with some discriminatory or retaliatory motive, such does not "clearly establish that a reasonable official faced with the same evidence of [plaintiff's misconduct]" would not have acted in the same manner. *Johnson*, 126 F.3d at 1379; *see Stanley*, 219 F.3d at 1297 ("Even if a reasonable [public official] acted with retaliatory motive, the law in [2001] did not clearly establish that a reasonable [public official] - faced with the same undisputed evidence of [plaintiff's] misconduct - should not have terminated [plaintiff] in the same manner.").

In this case, the court finds that Wood is entitled to a similar grant of immunity as was given under *Foy* and related cases.  A reasonable public official in his position would not have known that he could not make the decision to fire Plaintiff based upon the results of the hearing on the charges against Plaintiff for sexual misconduct.  Even assuming that a reasonable jury could find that Wood acted with a discriminatory or retaliatory motive in his actions, Plaintiff has presented no case law

---

*County, Ga.*, 207 F.3d 1303, 1321 (11th Cir. 2000)).

that establishes that "a reasonable [public official] - faced with the same undisputed evidence of [plaintiff's misconduct] - should not have [taken those actions] in the same manner." *Stanley*, 219 F.3d at 1297. Thus, under the analysis of *Foy*, the court finds that summary judgment on Plaintiff's §1983 equal protection claims is due to be granted on qualified immunity grounds.

Turning now to Plaintiff's procedural due process claims,[24] the court has studied very closely Plaintiff's arguments, including his criticisms about the application of the Eleventh Circuit's decision in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) to this case. As the court understands Plaintiff's position, because the procedural due process afforded to a public sector employee like Millard McKinney in the State of Florida differs from what is available to Plaintiff in the State of Alabama, applying the principles of the *McKinney* decision to Plaintiff's case without also considering Alabama due process requirements oversimplifies the legal analysis. However, the nature of the qualified immunity inquiry does not require the court to reach such a complex and convoluted conclusion here. At a minimum, Plaintiff's assertions, even if they have legal merit, are not based upon clearly established law;[25] therefore, Wood cannot be held personally liable for the purported procedural due process violations about which Plaintiff complains.[26]

---

[24]Because Plaintiff bases his due process claims upon his rights as a state employee, he has no substantive due process rights. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 826 (11th Cir. 2000) (noting that no substantive due process claim exists when due process violation is premised upon rights as state employee) (citing *McKinney*, 20 F.3d at 1559 ('ruling that "state employment decisions are not covered by . . . substantive due process jurisprudence"')).

[25]To the contrary, accepting Plaintiff's view about the limited scope of the *McKinney* opinion would be in contravention of clearly established law.

[26]The court reaches a similar conclusion about Plaintiff's efforts to establish a due process violation premised upon the alleged libelous acts of Wood under Alabama law (Doc. #99 at Ex. 2 at (C)) because Plaintiff has not shown (and cannot show) that such a purported constitutional claim against Wood is based upon clearly established law. Therefore, qualified immunity protects Wood,

However, the court sees additional flaws with Plaintiff's due process claims.  One of Plaintiff's primary concerns about the due process afforded to him during the disciplinary and review process is that he was not allowed to present or confront live witnesses at either his initial hearing before the ALJ or at the subsequent Board hearing before the CALJ.  At the same time, Plaintiff has not brought suit against either the ALJ or the CALJ; instead, he has only sued Wood in his individual capacity.  While Wood made the decision to discharge him, Plaintiff has not identified any evidence from which a reasonable trier of fact could conclude that he, and not the ALJ nor the CALJ, determined whether Plaintiff could present live witnesses and/or confront his accusers as part of the hearing processes.

Similarly, Plaintiff opines that the investigation leading up to the initial hearing by Investigator Kent was a sham orchestrated to suit Wood's preordained desire to discharge Plaintiff; yet Plaintiff has not adduced any evidence which would even tend to marginally support this inference, much less establish that Wood somehow controlled the outcome of the investigation or that Investigator Kent was Wood's mere puppet.  Indeed, to the contrary, Plaintiff has conceded that Wood played no role in the investigation.  (AF No. 5.1; AF No. 5.2).

Plaintiff also criticizes Wood for his alleged failure to present a summary or an explanation of the evidence to be used against Plaintiff during the pre-termination hearing.  To the contrary, it is undisputed that Wood sent and Plaintiff received a Notice which identified the rules that he was charged under and described the specific accusations of misconduct made against him.  Assuming, without deciding, that Plaintiff is even owed the same due process as a "tenured public employee," the court disagrees with Plaintiff that the Notice provided to him is somehow constitutionally

_____

and he cannot be held personally liable for such an alleged violation as a matter of law.

31

deficient under the familiar principles set forth by the Supreme Court in the *Loudermill* decision. Moreover, Plaintiff has wholly failed to carry his burden, in opposing Wood's qualified immunity defense, of showing the form and contents of the Notice violated clearly established procedural due process law. Therefore, there is insufficient evidence to support any alleged constitutional violations committed by Wood against Plaintiff, much less evidence that Wood violated clearly established constitutional law. As such, qualified immunity protects Wood from defending these claims, and he is entitled to judgment as a matter of law.

### E.      REMAINING STATE LAW CLAIMS

Having concluded that Defendants are entitled to summary judgment on all federal claims, pursuant to 28 U.S.C. § 1367(c)(3), the court, in its discretion, declines to exercise jurisdiction over the remaining state law claims of libel, and will enter an order dismissing them without prejudice.

## V.      CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be granted (and concomitantly, Plaintiff's Motion for Summary Judgment is due to be denied) as it relates to Plaintiff's claims under Title VII and § 1983. The court finds that no genuine issues of material fact remain for trial as to those claims and that Defendants are entitled to judgment as a matter of law. The court will enter an order dismissing Plaintiff's federal claims with prejudice. As for Plaintiff's remaining state law claims, the court declines to exercise jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3) and will enter an order dismissing them without prejudice.

**DONE** and **ORDERED** this 31st day of August, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE